UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GUNTHER MELE LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Court No. 15-00314 |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff, Gunther Mele Limited, by and through its attorneys, Sandler, Travis & Rosenberg, P.A., alleges as follows:

### Parties to the Action

1. The plaintiff in this case is Gunther Mele Limited (Gunther or plaintiff).

2. Gunther is an importer and wholesale distributor of stock and custom jewelry boxes, pouches, and similar items constructed of various materials.

3. Gunther is located at 30 Craig Street Brantford, Ontario, Canada, N3R 7J1

4. Plaintiff was the importer of record on all the entries subject to this action.

5. The defendant in this case is the United States.

### Nature of the Action

6. This action contests the classification and assessment of certain duties by U.S. Customs and Border Protection (CBP or Customs), by and on behalf of the United States and its agencies on certain plastic jewelry boxes. Plaintiff seeks a refund of all duties unlawfully assessed and paid by Gunther, plus interest as provided by law.

7. The assessed and claimed provisions of the Harmonized Tariff Schedule of The United States (HTSUS) provide as follows:

Complaint
Court No. 15-00314

| | | |
|---|---|---|
| 4202 | | Trunks, suit-cases, vanity-cases, executive-cases, brief-cases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; travelling-bags, insulated food or beverage bags, toiled bags, rucksacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder boxes, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper: |
| | | Other: |
| 4202.92 | | With outer surface of sheeting of plastic or of textile materials: |
| 4202.92.90 | | Other |
| 4202.99 | | Of materials (other than leather, composition leather, sheeting of plastics, textile materials, vulcanized fiber or paperboard) wholly or mainly covered with paper: |
| 4202.99.10 | | Of Plastics |

## Jurisdiction

8. The Court of International Trade possesses subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1581(a), in that the actions contested were the subject of timely filed protests and a timely filed summons, following the denial of the protests.

9. All liquidated duties, charges, including interest, if any, have been timely paid for the entries included in the protests underlying this action.

## Background

10. The merchandise at issue consists of certain models of plastic jewelry boxes that CBP determined were classifiable as having an "outer surface of sheeting of plastic." (subject merchandise).

2

11. Gunther imported the subject merchandise between 2010 and 2013, through the port of Buffalo, New York.

12. The models at issue include but are not limited to the Horizon, Vantage, Eclipse, Galleria Gold and Roma which are all plastic jewelry boxes covered with paper with or without an application of a plastic material.

13. Model names, other than Galleria Gold, refer to the shape of the jewelry box rather than the covering material. Galleria Gold refers to a specific gold-colored covering which may enrobe or be applied to any shape jewelry box.

14. Plaintiff entered the subject merchandise under subheading 4202.99.10, Harmonized Tariff Schedules of the United States (HTSUS), at a duty rate of 3.4 percent *ad valorem*.

15. Plaintiff's claimed tariff classification of the subject merchandise is based upon the physical characteristics of the merchandise, and by numerous prior reviews, actions, and decisions made by Customs classifying identical, or substantially identical, products under subheading 4202.99.10, HTSUS, which provides, in relevant part, for other containers of plastic wholly or mainly covered with paper.

16. First, certain of the imported merchandise consists of plastic jewelry boxes wholly or mainly covered in paper without a plastic treatment. The remainder of the merchandise consists of plastic jewelry boxes wholly covered in paper that had been processes with a *de minimis* plastic treatment.

17. With respect to the merchandise covered in paper with a *de minimis* plastic treatment, the plastic is neither visible nor tactile.

18. For purposes of the tariff, CBP has explained that at the six-digit level,

Complaint
Court No. 15-00314

classifications under heading 4202 are controlled by the material that composes the objects' outer surface. *See* HQ963618. The outer surface is only that which is "both visible and tactile." *See* HQ 965563.

19. Further, in H953610, dated April 30, 1993, CBP Headquarters determined that a hinged jewelry presentation box "composed of a leatherette plastic coated paper with a caliper of approximately .006 inches wrapped over a plastic box" should be classified under subheading 4202.99.10, HTSUS. While not precedential, the United States previously recognized CBP's treatment of substantially identical jewelry boxes under 4202.99.10, HTSUS, based upon H953610. *See Kalencom v. United States*, Court Nos. 97-00018, 00-00268, 00-00574, 00-00491, 01-00030, 01-01087, 02- 00625. *See also Fortunoff Fine Jewelry & Silverware, Inc. v. United States*, Court Nos. 03-00891, 04-00288, 05-00156.

20. H953610 was in effect and applicable at all times relevant to this matter.

21. Finally, between 2006 and 2010, prior to the subject entries, Gunther made hundreds of entries through multiple ports of merchandise that was identical or substantially identical to the subject merchandise including entries within two years preceding the entries at issue. Exhibit A. For all such entries of goods that were identical or substantially identical to the subject merchandise, plaintiff claimed classification under 4202.99.10, HTSUS, which was consistent with CBP's directive in H953610. Also consistent with H953610, CBP liquidated the merchandise as entered by Gunther under 4202.99.10, HTSUS.

22. In addition to liquidating "as entered" (i.e., under subheading 4202.99.10, HTSUS) the hundreds of entries of identical or substantially identical merchandise imported by plaintiff during the period identified in paragraph 21 above, CBP Import Specialists (IS) conducted and specifically recorded more than sixty (60) reviews of entry lines covering merchandise identical

4

Complaint
Court No. 15-00314

to the subject merchandise. Pursuant to these reviews, CBP liquidated such entries without a change in tariff classification. These IS reviews are identified on Exhibit B.

23. On multiple occasions, the CBP reviews described in paragraph 22 above included a physical inspection of sample merchandise identical or substantially identical to the merchandise at issue. In each instance, after reviewing the sample, CBP classified such merchandise in 4202.99.10, HTSUS, as entered by Gunther, and liquidated such entries without a change in tariff classification. Exhibit B.

24. For example, on November 1, 2006, a CBP IS at the port of Buffalo, NY reviewed Entry No. 39043632684, to determine whether identical or substantially identical merchandise was properly classified under 4202.99.10, HTSUS. In conjunction with its classification investigation, CBP issued a Customs Form (CF) 28 requesting sample merchandise and literature from Gunther. Gunther provided all requested materials. CBP acknowledged "samples received and determined to be claasified (sic) correctly" and liquidated the merchandise as entered by Gunther under subheading 4202.99.10, HTSUS. Exhibit B at 1.

25. Despite the merchandise's physical characteristics and Customs' prior consistent, regular, and nationwide review and treatment of the subject merchandise as plastic jewelry boxes "wholly or mainly covered in paper," on May 19, 2011, without publishing a public notice or providing an opportunity for public comment as required by Section 1625, CBP issued a CF 29 Notice of Action (May 19 Notice of Action) changing the tariff classification of the subject merchandise from 4202.99.10, HTSUS, to 4202.92.90, HTSUS.

26. Specifically, the May 19 Notice of Action cited to the CBP Laboratory's findings that samples of the subject models submitted for review were coated with an acrylic type plastic and stated "[t]herefore, it was determined that the correct classification of the boxes was

5

Complaint
Court No. 15-00314

4202.92.9060/17.5%". The May 19 Notice also directed Gunther to "enter all future shipments accordingly." Exhibit C. Although it was identified as a "Proposed" Notice of Action on Box 12 of the Form, it did not provide an opportunity to respond to a proposed action within 20 days, as is standard CBP practice, and was relied upon to rate advance other entries.

27. On June 14, 2011, CBP visited Gunther, suggesting it file a prior disclosure on the classification of its paper-covered plastic jewelry boxes entered under subheading 4202.99.10, HTSUS. As a protective measure, Gunther filed a prior disclosure on June 26, 2011. CBP thereafter rate advanced certain of the entries at issue in accordance with the determination articulated in the May 19, 2011 Notice of Action.

28. On September 16, 2011, Gunther asserted its claim of treatment previously accorded substantially identical transactions (treatment) pursuant to 19 U.S.C. § 1625(c)(2) in a submission to CBP filed pursuant to the Prior Disclosure. Gunther's claim for treatment relates back to the first entry at issue in this action. *See American Fiber Finishing Inc. v. United States*, 121 F. Supp 3d 1273 (Ct. Int'l Tr. 2015).

29. On September 28, 2011, CBP issued twelve (12) Proposed Notices of Action on other styles of paper-covered plastic jewelry boxes, referred to as Geo, Broughman, Monte Carlo and TSC Gold, also citing to laboratory findings, and stating the correct classification of the subject merchandise was subheading 4202.92.9060, HTSUS. These notices gave Gunther the opportunity to respond to the proposed reclassified within 20 days of the date of the notices.

30. By letter dated October 13, 2011, Gunther submitted written comments in response to these Notices indicating that CBP stated verbally on October 6, 2011, that it would liquidate the entries in accordance with the Proposed Notices referenced in Paragraph 29 notwithstanding

6

Gunther's claim for treatment. Plaintiff thereafter filed six timely protests challenging the liquidation and classification of the subject merchandise. CBP denied each protest.

## COUNT I

## CLASSIFICATION

31. Plaintiff Repeats the allegations of Paragraphs 1 through 30, as if the same were set forth herein in full.

32. The subject merchandise is comprised of plastic jewelry boxes wholly covered in paper.

33. Certain of the jewelry boxes at issue are wholly or mainly covered in paper which had not been treated with plastic.

34. Of the remainder, although the paper covering the jewelry boxes was treated with a *de minimis* amount of plastic, the plastic treatment was neither visible nor tactile and therefore does not constitute the outer surface for tariff purposes.

35. As a result, the subject merchandise is classifiable under subheading 4202.99.10, HTSUS, and plaintiff is entitled to a refund equal to the difference between the rates of duty assessed on the merchandise on liquidation and the rate of duty claimed by the importer in its protests under subheading 4202.99.10, HTSUS, together with all applicable interest.

## COUNT II

## Violation of "Treatment" Statute

36. Plaintiff Repeats the allegations of Paragraphs 1 through 30, as if the same were set forth herein in full.

37. Section 1625 of Title 19 of the United States Code sets forth certain measures Customs must take with respect to its proposed interpretive rulings, which include "decisions."

Complaint
Court No. 15-00314

Customs must publish in the Customs Bulletin or make available for public inspection "any interpretive ruling (including any ruling letter, or internal advice memorandum). . . ." 19 U.S.C. § 1625(a).

38. Section 1625(c)(1) of Title 19 of the United States Code directs Customs to publish in the Customs Bulletin a decision that modifies or revokes interpretive rulings or decisions that have been in effect for at least 60 days. Customs is also directed to publish decisions that modify Customs' previous "treatment" of "substantially identical transactions." *See* 19 U.S.C. § 1625(c)(2).

39. Section 1625(c)(1) provides, in pertinent part:

> (c) **Modification and revocation**
> A proposed interpretive ruling or decision which would—
>
>     \*    \*    \*
>
> (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;
>
> shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision.

40. The customs regulations governing "treatment" that are applicable to the entries in this case are 19 C.F.R. § 177.12(c).

41. The aforementioned customs regulations set forth the specific requirements for establishing a "treatment." They provide in pertinent part:

> (c) *Treatment previously accorded to substantially identical transactions - (1) General.* The issuance of an interpretative ruling that has the effect of modifying or revoking the treatment previously accorded by Customs to substantially identical transactions must be in accordance with procedures set forth in (c)(2) of this section. The following rules will apply for purposes of determining under this

8

Complaint
Court No. 15-00314

    section whether a treatment was previously accorded by Customs to substantially identical transactions of a person:
       (i) There must be evidence to establish that:
         (A)    There was an actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment;
         (B)    The Customs officer making the actual determination was responsible for the subject matter on which the determination was made; and
         (C)    Over a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues;
       (ii) The determination of whether the requisite treatment occurred will be made by Customs on a case-by-case basis and will involve an assessment of all relevant factors. In particular, Customs will focus on the past transactions to determine whether there was an examination of the merchandise (where applicable) by Customs or the extent to which those transactions were otherwise reviewed by Customs to determine the proper application of the Customs laws and regulations. For purposes of establishing whether the requisite treatment occurred, Customs will give diminished weight to transactions involving small quantities or values, and Customs will give not weight whatsoever to informal entries and to other entries or transactions which Customs, in the interest of commercial facilitation and accommodation, processes expeditiously and without examination or Customs officer review;

    42.    The person claiming "treatment" has the evidentiary burden of proving the existence of a previously accorded treatment. 19 C.F.R. § 177.12(c)(1)(iii). Additionally, "[t]he evidence of a previous treatment by Customs must include a list of all materially identical transactions by entry number (or other Customs assigned number), the quantity and value of merchandise covered by each transaction (where applicable), the ports of entry, the dates of final action by Customs, and, if known, the name and location of the Customs officer who made the determination on which the claimed treatment is based." *Id*.

    43.    Under the treatment statute and the applicable regulations, the term 'treatment' looks to the *actions* of Customs, rather than its 'position' or 'policy.'" *See Motorola, Inc. v. United States*, 436 F.3d 1357 (Fed. Cir. 2006); *Peerless Clothing Int'l, Inc. v. United States*, 602

9

Complaint
Court No. 15-00314

F. Supp. 2d 1309 (Ct. Int'l Tr. 2009); *Precision Specialty Metals Inc. v. United States*, 116 F. Supp. 2d 1350 (Ct. Int'l Tr. 2000).

44.     To determine the existence of a "substantially identical transaction" under 19 U.S.C. § 1625(c), "the test is 'substantial' and not 'exact.'" *Motorola v. United States*, 436 F.3d 1357, 1367 (Fed. Cir. 2006) (affirming lower court's finding).

45.     In addition to the hundreds of entries of identical or substantially identical merchandise entered by plaintiff between 2006 and 2010 demonstrating previous, consistent, nationwide treatment afforded by Customs set forth in *Exhibit A*, attached *Exhibit B* lists identical or materially identical transactions where Customs has recorded its review and examination of specific entries by plaintiff, including review of identical or substantially identical samples. *Exhibit B* identifies these entries by entry number, entry date, the ports of entry, the dates of final action by Customs, and the Customs Team (by team number) that made the determination on which the claimed treatment is based. See 19 C.F.R. § 177.12(c)(1)(iii). Under the *Exhibit B* column entitled "import specialist comments," the reviewing Customs Import Specialists make various comments clearly demonstrating review and/or examination of nearly sixty entries of identical or substantially identical merchandise each of which CBP liquidated under 4202.99.10 HTSUS.

46.     The import specialist comments reflect actual reviews of physical samples of identical (Gold Galleria) or materially identical merchandise to the subject merchandise for classification validation. Thus, the import specialist comments evidence "actual determinations by Customs officer regarding the facts and issues involved in the claimed treatment."

47.     The entries and liquidations described in the paragraph 35 above include those that occurred within the two-year period immediately prior to Gunther's claim for treatment, which arose out of the Notice of Action issued May 19, 2011.

Complaint
Court No. 15-00314

48. The U.S. Court of International Trade has held that Customs' consistent "liquidations," following review or examination, of substantially identical merchandise imported through multiple ports throughout the United States, constitute 'treatment' pursuant to 19 U.S.C. § 1625(c). *Precision Specialty, supra; Peerless Clothing, supra.* Such liquidations also constitute "actual determination[s] by a Customs officer" within the meaning of 19 C.F.R. § 177.12(c).

49. The transactions covering the subject entries are identical or substantially identical to those prior transactions that were afforded "treatment" because the transactions at issue and the prior transactions each involved Gunther's importation of identical or substantially identical plastic jewelry boxes covered with paper with or without the application of a plastic material under subheading 4202.99.10, HTSUS, and CBP's liquidation of the merchandise as entered by Gunther.

50. The May 19, 2011 Notice of Action determining that the merchandise at issue was classified under subheading 4202.92.90, HTSUS, and not 4202.99.10, HTSUS, and directing Gunther to enter future entries accordingly, was a decision by Customs within the meaning of 19 U.S.C. § 1625(c). *See International Custom Products v. United States*, 748 F. 3d 1182 (Fed. Cir. 204). That decision had the effect of revoking the treatment previously accorded Gunther's entries. Thus, Customs failure to publish notice of the decisions embodied in the Notice of Action in the Customs Bulletin and seek public comment on same, was in violation of 19 U.S.C. § 1625(c)(2).

51. Alternatively, the liquidations covering the subject entries, with a change in classification from HTSUS 4202.99.10, HTSUS, to 4202.92.90, HTSUS, are "decisions" by Customs within the meaning of 19 U.S.C. § 1625(c). Customs failed to publish notice of the decisions embodied in these liquidations in the Customs Bulletin and seek public comment on same, in violation of 19 U.S.C. § 1625(c)(2).

Complaint
Court No. 15-00314

52. Accordingly, plaintiff is entitled to a refund equal to the difference between the rates of duty assessed on the merchandise on liquidation and the rate of duty claimed by the importer in its protests under subheading 4202.99.10, HTSUS, together with all applicable interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment overruling the Port Director's denial of Plaintiff's protests and ordering Customs to reliquidate the subject entries at the rate, value and amount of duty asserted by the importer of record in its protests, and refund to Plaintiff an amount equal to the duties assessed, plus interest as appropriate.  Plaintiff also requests such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

**SANDLER, TRAVIS & ROSENBERG, P.A.**
*Attorneys for Plaintiff*
675 Third Avenue, Suite 1805-06
New York, New York 10017
Telephone: (212) 549-0137

By:     /s/ Jason M. Kenner
          JASON M. KENNER

Dated: October 28, 2021
         New York, New York